The Honorable Andrew J. Ziser Prosecuting Attorney Courthouse Annex Fayetteville, AR 72701-6192
Dear Mr. Ziser:
This is in response to your request for an opinion regarding Section II of Amendment 51 to the Constitution of Arkansas. You note that under this section, the Permanent Registrar is charged with the duty to cancel the registration of a voter who has changed his residence or who has died. Your specific questions are as follows:
 How much proof does the County Clerk (Permanent Registrar) need concerning these matters before he should cancel the registration of a voter? Is an affidavit from one citizen sufficient? Is the clerk authorized to remove somebody's name from the voters list once he is satisfied that they are no longer qualified? How about the situation where one person is providing one piece of information to the clerk and the person whose name is sought to be removed from the voting list disputes the information provided by the first person?
Amendment 51, the voter registration amendment, contains no specific guidelines or requirements governing the process by which the Permanent Registrar (County Clerk) assesses voter qualifications. Subsection (g) of Section 11 of the Amendment provides that the Registry may "by mail check, house to house canvass or any other reasonable means" determine whether the active registration files contain the names of any persons not qualified to vote. That subsection also provides for the Prosecuting Attorney's application to the Circuit Court, "based upon affidavits of one or more qualified voters," for an order mandating such a determination or cancellation of a registration.
It is thus clear that the Registrar has the authority, and the duty, to make this determination through "any . . . reasonable means." What constitutes "reasonable means" can only be determined, in the first instance, by the Registrar based upon the particular facts of each case. An affidavit could, presumably, offer a sufficient basis. Whether or not the affidavit in itself constitutes a "reasonable means" would, however, depend upon the individual circumstances, including the Registrar's knowledge of other material facts.
Case law authority offers very little guidance in this area. The Arkansas Supreme Court's ruling in Merritt v. Jones, 259 Ark. 380,533 S.W.2d 497 (1976) is perhaps illustrative of how a court would interpret Section 11(c) of Amendment 51. This subsection states: "It shall be the duty of the Director of the Bureau of Vital Statistics to notify promptly the Permanent Registrar in each county of the death of all residents of such county." A similar provision involving felony convictions was at issue in Merritt v. Jones. Under Section 11(d), the Circuit Clerk must "notify promptly the Permanent Registrar of the county of residence of such convicted felon." This notice requirement was raised in Merritt v. Jones as an absolute prerequisite to the Registrar's cancellation of a voter registration. The court rejected this contention, stating:
 That obviously is not the case. Subparagraph 11(d) simply states an additional duty of the circuit clerk and it is one method by which the Registrar may obtain information concerning disqualification of a voter. . . . Moreover, subparagraph 11(g) specifically provides that the registrar may by house to house canvass or ANY OTHER REASONABLE MEANS determine whether the active registration files contain the names of any person not qualified to vote. That subsection also provides for the Prosecuting Attorney upon affidavits to apply for an order of the Circuit Court to determine or cancel a registration. That procedure likewise is only one method and it is not exclusive. (Emphasis added.)
 259 Ark. at 388
The Registrar in that case had obtained an authenticated copy of the U.S. District Court judgment which formed the basis for the conclusion that there was a felony conviction. The Arkansas Supreme Court specifically approved that procedure as one method of determining a court's action upon a criminal prosecution. Id. at 389.
The Court's reasoning in Merritt v. Jones would, it seems, also apply with regard to Section 11(c) involving the Bureau of Vital Statistics' duty to notify the Registrar of deaths in the county. This notice would provide a basis for the Registrar's cancellation of the registration of those deceased voters. The Registrar is not, however, limited to this source of information.
With regard to the residence requirement, the Arkansas Supreme Court has stated that the intent of the voter is correctly considered with his conduct as to his asserted residence. Booth v. Smith Garver, 261 Ark. 838, 840, 552 S.W.2d 19 (1977), citing Pike Co. Sch. Dist. 1 v. Pike Co. Ed. Bd., 247 Ark. 9, 444 S.W.2d 72
(1969).
In response to your remaining specific questions, it is my opinion that the Registrar may cancel the registration of a voter once he is satisfied that the person is no longer qualified, assuming that "reasonable means" have been employed in making this determination. There is no established degree of proof required in this regard. The selection of "reasonable means" will be dictated by the particular circumstances in each instance. If faced with conflicting information, the Registrar will be in a position to seek alternative sources of information in order to resolve the issue.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.